**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **MEMENTO MORI, LLC** | ) | **Case No. 18-04661-5-DMW** |
| | ) | **Chapter 11** |
| Debtor. | ) | |

**PLAN OF REORGANIZATION**
**March 19, 2019**

**JASON L. HENDREN**
N.C. State Bar #26869
**REBECCA F. REDWINE**
N.C. State Bar #37012

**Attorneys for Debtor**
**HENDREN, REDWINE & MALONE, PLLC**
**4600 Marriott Drive, Suite 150**
**Raleigh, NC 27612**
**Telephone: (919) 573-1422**
**Facsimile: (919) 420-0475**
**Email: jhendren@hendrenmalone.com**

# TABLE OF CONTENTS

Summary of Plan..................................................................................................4

Definitions.........................................................................................................5

III.    Treatment of Administrative and Priority Tax Claims ........................7
        a.  Administrative Claims ...............................................................7
        b.  Priority Tax Claims...................................................................7

IV.     Treatment and Impairment of Classes ...............................................7
        Class I – Priority Non-Tax Claims..................................................7
        Class II – Pinnacle Bank .................................................................8
        Class III – American Lending Center, LLC......................................8
        Class IV – Mercantile Capital Corporation .....................................9
        Class V – Town of Cary...................................................................10
        Class VI – NC Department of Revenue ...........................................12
        Class VII – Bryn Mar Equipment Finance, Inc ...............................12
        Class VIII – Ibis Capital Group, LLC dba Nugrowth ......................13
        Class IX –Key Equipment Finance .................................................13
        Class X – US Bank Equipment Finance ..........................................14
        Class XI – Xeros, Inc .....................................................................14
        Class XII – Judgment Creditors ......................................................15
        Class XIII– General Unsecured Claims...........................................15
        Class XIV Equity Security Holders ................................................16

V.      Means of Execution  ........................................................................17

VI.     Similar Treatment for Each Claim Within a Class  ..........................20

VII.    Provisions Governing Distributions..................................................20

VIII.   Treatment of Executory Contracts and Unexpired Leases ...............20

IX.     Acceptance or Rejection of Plan......................................................20

X.      "Cramdown" for Impaired Creditors Not Accepting the Plan............22

XI.     Retention of Jurisdiction.................................................................22

XII.    Miscellaneous Provisions..........................................................................23

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **MEMENTO MORI, LLC** | ) | **Case No. 18-04661-5-DMW** |
| | ) | **Chapter 11** |
| Debtor. | ) | |

## PLAN OF REORGANIZATION

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor, Memento Mori, LLC, hereby submits the following Plan of Reorganization:

## I. SUMMARY OF PLAN

The Debtor is a North Carolina Limited Liability Company located in Cary, North Carolina that operates two boutique hotels in Cary and Durham. The Debtor's Plan of Reorganization ("Plan") is based upon the Debtor's belief that the interests of its creditors will be best served if it is allowed to market the two hotels as a going concern at fair market value and use the Liquidation Proceeds from such sales to maximize the value for the benefit of all creditors of the Estate.

The Debtor will pay the administrative costs upon such mutually acceptable terms as the parties may agree from the Liquidation Proceeds and as set forth more fully herein.

Any and all priority taxes due and owing to the Internal Revenue Service, N.C. Department of Revenue, or any county or city taxing authority shall be paid in full as set forth more fully herein.

The Debtor will treat the secured claims of Pinnacle Bank, USEDLC, LLC, Mercantile Capital Corporation, Town of Cary, NC Department of Revenue, Bryn Mawr Equipment Finance, Inc., Ibis Capital Group, LLC, Key Equipment Finance, US Bank Equipment Finance and Xeros, Inc. as outlined more fully herein.

In accordance with the liquidation analysis attached to the Disclosure Statement as Exhibit "C", the Debtor will pay a dividend to the unsecured claims from the Liquidation Proceeds as outlined more fully herein.

The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

# II.  <u>DEFINITIONS</u>

1.      "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.  References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, <u>et</u> <u>seq</u>.

2.      "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

3.      "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

4.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

5.      "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1129.

6.      "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

7.      "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

8.      "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

9.      "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

10.     "DEBTOR" shall mean Memento Mori, LLC.

11.     "DISBURSING AGENT" shall mean Jason L. Hendren, attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

12.     "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

13.     "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance,

in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

14.     "EFFECTIVE DATE" shall be the date that is fifteen (15) days following entry of the Order Confirming Plan.

15.     "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

16.     "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

17.     "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition, to wit, September 20, 2018.

18.     "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

19.     "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

20.     "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

21.     "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

22.     "SUBSTANTIAL CONSUMMATION" shall mean the time the Reorganized Debtor has commenced the distribution of initial Plan payments to creditors.

23.     "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(8).

24.     "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a tax claim, administrative claim, or secured claim.

25.     "LIQUIDATION PROCEEDS" means funds resulting from the liquidation of the Debtor's real and personal property (including cash on hand remaining after the real property is sold), less costs of liquidation as more fully described in the Section V Means of Execution.

26.     "PLAN RATE" shall mean the interest rate for secured creditors during the marketing period, namely five percent (5.5%).

### III.  TREATMENT OF ADMINISTRATIVE AND PRIORITY TAX CLAIMS

a.  <u>Administrative Claims</u>.  Administrative costs and expenses approved by the Court shall be paid in cash and in full on the Effective Date of the Plan to the extent of available cash on hand. In the event that funds are not available to pay such costs and expenses on the Effective Date of the Plan, then each holder of such a claim will receive monthly payments from the Debtor's cash flow until paid in full or as otherwise agreed between the Debtor and any holder of such claim. Parties to executory contracts with the Debtor should consult Section VIII of the Plan for additional provisions governing asserted administrative claims. Such claims remaining unpaid thirty (30) days following the Effective Date shall accrue interest at a rate of 4% per annum.

EXCEPT FOR COURT APPROVED PROFESSIONALS, ALL OTHER ADMINISTRATIVE CLAIMS AGAINST THE ESTATE MUST BE FILED WITHIN SIXTY DAYS (60) OF THE DATE OF THE CONFIRMATION ORDER.   OTHERWISE, SUCH CLAIMS SHALL BE WAIVED AND SHALL NOT BE ASSERTED AGAINST THE DEBTORS AT ANY TIME.

b.  <u>Priority Tax Claims</u>.  The Debtor proposes to pay these claims in full from distribution of the Liquidation Proceeds.  Notwithstanding the foregoing, the Holder of an allowed Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the allowed Priority Tax Claim.  Any Claim or demand for any such penalty will be subject to treatment as an Unsecured Claim, to the extent allowed.  These claims shall be reduced by any post-petition payments paid on the pre-petition claims.

### IV.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes.  Section III describes the treatment of Administrative Claims and Priority Tax Claims.  For the purposes of this Plan, Holders of Claims against, or Interests in, the Debtor are classified as follows in accordance with section 1122(a) of the Bankruptcy Code:

A.     <u>Class I – Priority Non-Tax Claims</u>.  On the Effective Date, the Holders of Allowed Claims in Class I shall receive (a) all amounts to which such Holder is entitled on account of such allowed Claim on the later of (i) the Effective Date or (ii) the date when such allowed Claim becomes due and payable according to its terms and conditions, or (b) such other, less favorable treatment as is agreed upon by the Debtor and the Holder of such allowed Priority Non-Tax Claim. The Debtor does not believe there are any claims in this class.

B.     Class II – Pinnacle Bank ("Pinnacle").

(1)     Classification.  On or about April 20, 2011 the Debtor and Pinnacle, as successor by merger with Bank of North Carolina, as successor by merger to KeySource Commercial Bank entered into a business loan agreement (the "Pinnacle Loan") in the original principal amount of $3,965,000 with interest accruing at a variable rate of prime plus 2.75% per annum. The Pinnacle Loan was secured by a Deed of Trust recorded in Book 6707, at page 481, in the office of the Durham County Register of Deeds, which encumbers the Debtor's real property located at 204 Buchanan Boulevard, Durham, North Carolina (hereinafter "Durham Property").  Further, Pinnacle filed a UCC-1 with the North Carolina Secretary of State bearing file number 20110023747J on March 22, 2011. According to the Proof of Claim filed by Pinnacle, the outstanding balance owed as of the petition date was $3,344,933.80.

(2)     Impairment.    This class will be impaired.

(3)     Treatment.        This obligation shall be treated as a secured obligation of the Debtor in an amount equal to all outstanding principal and interest due on the petition date plus any post-petition interest, costs and expenses which may be approved by the Court pursuant to Section 506(b) less payments received on a post-petition basis.  Pinnacle shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid.  The Debtor intends to continue to market the Durham Property and shall pay Pinnacle from the Liquidation Proceeds of the collateral securing its claim in accordance with Section V herein. In the event that a deficiency balance remains after the application of the Liquidation Proceeds, such deficiency shall be treated in Class XIII, General Unsecured Claims, hereunder.  The note shall be treated as current, non-default loan.

The outstanding balance shall be calculated on a non-default basis and shall accrue post-petition interest at the Plan Rate until the Durham Property is sold and the Liquidation Proceeds are applied to the claim.  Monthly interest only payments at the Plan Rate shall be made on the 25th day of each month, with the first payment due in the first full month following the Effective Date, to the extent the Debtor maintains a positive cash flow pursuant to its monthly operating budget.  Should the monthly payment result in a negative cash flow, then said payment will accrue and be paid in future months to the extent of available positive cash flow.  To the extent Pinnacle Bank is deemed undersecured, such monthly payments shall be applied to the principal balance of the Pinnacle Loan.

C.     Class III – American Lending Center, LLC ("ALC").

(1)     Classification.  On or about October 16, 2014, the Debtor and American Lending Center, LLC entered into to a promissory note and loan agreement (the "ALC Loan") in the original principal amount of $6,000,000.00 with interest accruing at the rate of 11.50% per annum.

The ALC Loan was secured by a Deed of Trust recorded in Book 15822, at page 2635, in the office of the Wake County Register of Deeds, which encumbers the Debtor's real property located at 301 S. Academy Street, Cary, North Carolina (hereinafter "Cary Property"). Further, ALC filed a UCC-1 with the North Carolina Secretary of State bearing file number 20140103788F on November 5, 2014. According to the Proof of Claim filed by ALC, the outstanding balance owed as of the petition date was $6,349,841.67.

(2)     Impairment.     This class will be impaired.

(3)     Treatment.     This obligation shall be treated as a secured obligation of the Debtor in an amount equal to all outstanding principal and interest due on the petition date plus any post-petition interest, costs and expenses which may be approved by the Court pursuant to Section 506(b) less any payments made on a post-petition basis.  ALC shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid.  The Debtor intends to market the Cary Property and shall pay ALC from the Liquidation Proceeds of the collateral securing its claim in accordance with Section V herein. In the event that a deficiency balance remains after the application of the Liquidation Proceeds, such deficiency shall be treated in Class XIII, General Unsecured Claims, hereunder.  The note shall be treated as current, non-default loan.

The outstanding balance shall be calculated on a non-default basis and shall accrue post-petition interest at the Plan Rate until the earlier of satisfaction of the ALC Loan or until the Cary Property is sold and the Liquidation Proceeds are applied to the claim.  Monthly interest only payments at the Plan Rate shall be made on the 25th day of each month, with the first payment due in the first full month following the Effective Date, to the extent the Debtor maintains a positive cash flow pursuant to its monthly operating budget.  Should the monthly payment result in a negative cash flow, then said payment will accrue and be paid in future months to the extent of available positive cash flow.  To the extent ALC is deemed undersecured, such monthly payments shall be applied to the principal balance of the ALC Loan.

D.     Class IV – Mercantile Capital Corporation ("Mercantile").

(1)     Classification.  On or about October 28, 2014, the Debtor and Mercantile entered into to a promissory note and loan agreement (the "Mercantile Loan") in the original principal amount of $5,137,500.00 with interest accruing at the rate of 7.49% per annum. The Mercantile Loan was secured by a Deed of Trust recorded in Book 15822, at page 2645, in the office of the Wake County Register of Deeds, which encumbers the Debtor's real property located at 301 S. Academy Street, Cary, North Carolina. Further, Mercantile filed a UCC-1 with the North Carolina Secretary of State bearing file number 20140103807H on November 5, 2014 and 20170130350C on December 28, 2017. According to the Proof of Claim filed by Mercantile, the outstanding balance owed as of the petition date was $5,315,027.90.

(2)     Impairment.     This class will be impaired.

(3) <u>Treatment</u>.    This obligation shall be treated as a secured obligation of the Debtor in an amount equal to all outstanding principal and interest due on the petition date plus any post-petition interest, costs and expenses which may be approved by the Court pursuant to Section 506(b) less any payments made on a post-petition basis.  Mercantile shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid.  The Debtor intends to market the Cary Property and shall pay Mercantile from the Liquidation Proceeds of the collateral securing its claim in accordance with Section V herein. In the event that a deficiency balance remains after the application of the Liquidation Proceeds, such deficiency shall be treated in Class XIII, General Unsecured Claims, hereunder.  The note shall be treated as current, non-default loan.

The outstanding balance shall be calculated on a non-default basis and shall accrue post-petition interest at the Plan Rate until the earlier of satisfaction of the Mercantile Loan or until the Cary Property is sold.  Monthly interest only payments at the Plan Rate shall be made on the 25th day of each month, with the first payment due in the first full month following the Effective Date, to the extent the Debtor maintains a positive cash flow pursuant to its monthly operating budget. Should the monthly payment result in a negative cash flow, then said payment will accrue and be paid in future months to the extent of available positive cash flow.  To the extent Mercantile is deemed undersecured, such monthly payment shall be applied to the principal balance of the Mercantile Loan.

E.    <u>Class V – Town of Cary ("Cary")</u>.

(1)    <u>Classification</u>.

<u>Cary Note 1</u>:

On or about October 24, 2014, the Debtor and Town of Cary entered into to a promissory note and loan agreement (the "Cary Note 1") in the original principal amount of $951,350.00 with interest accruing at the rate of 6.0% per annum amortized over twenty (20) years. The Cary Note 1 was secured by a North Carolina Balance Purchase Money Deed of Trust recorded in Book 15822, at page 2696, in the office of the Wake County Register of Deeds, which encumbers the Debtor's real property located at 301 S. Academy Street, Cary, North Carolina (hereinafter "Cary Property"). Further, Cary filed a UCC-1 with the North Carolina Secretary of State bearing file number 20140103814F on November 5, 2014. According to the Proof of Claim filed by Cary, the outstanding balance owed on Cary Note 1 as of the petition date was $1,179,674.00.

<u>Cary Note 2</u>:

On or about October 29, 2014, the Debtor and Town of Cary entered into to a promissory note and loan agreement (the "Cary Note 2") in the original principal amount of $1,400,000.00 with interest accruing at a fixed rate of 1.6% per annum. The Cary Note 1 was

secured by a Deed of Trust recorded in Book 15822, at page 2696, in the office of the Wake County Register of Deeds, which encumbers the Debtor's real property located at 301 S. Academy Street, Cary, North Carolina (hereinafter "Cary Property"). Further, Cary filed a UCC-1 with the North Carolina Secretary of State bearing file number 20140103812C on November 5, 2014. According to the Proof of Claim filed by Cary, the outstanding balance owed on Cary Note 2 as of the petition date was $1,771,755.18.

      (2)    <u>Impairment</u>.    This class will be impaired.

      (3)    <u>Treatment</u>.

<u>Cary Note 1:</u>

This obligation shall be treated as a secured obligation of the Debtor in an amount equal to all outstanding principal and interest due on the petition date plus any post-petition interest, costs and expenses which may be approved by the Court pursuant to Section 506(b) less any payments made on a post-petition basis. Town of Cary shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until the secured claim is paid. Cary Note 1 shall be treated as current, non-default loan. The outstanding balance shall be calculated on a non-default basis. Debtor shall pay to the Town the monthly amount of $7,859.23 from May 2019 to October 2019. Monthly payments shall be made on or before the 15th day of the month. Debtor shall resume payments beginning in April 2020 and continue through October 2020, to the extent the Property has not been sold. Otherwise, payments shall continue in the months of April through October of each year.

The Debtor intends to market the Cary Property and shall pay the Town of Cary from the Liquidation Proceeds of the collateral securing its claim in accordance with Section V herein. In the event that a deficiency balance remains after the application of the Liquidation Proceeds, such deficiency shall be treated in Class XIII, General Unsecured Claims, hereunder. The note shall be treated as current, non-default loan.

<u>Cary Note 2:</u>

This obligation shall be treated as a fully secured obligation of the Debtor and this creditor shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until such claim is paid in full. Cary Note 2 shall be treated as current, non-default loan. The outstanding balance shall be calculated on a non-default basis. The Debtor intends to market the Cary Property and shall pay the Town of Cary from the Liquidation Proceeds of the collateral securing its claim in accordance with Section V herein. In the event that a deficiency balance remains after the application of the Liquidation Proceeds, such deficiency shall be treated in Class XIII, General Unsecured Claims, hereunder. The note shall be treated as current, non-default loan.

F.     Class VI – NC Department of Revenue ("NCDOR").

(1)     Classification. Class VI consists of the secured tax claim of the Class VI creditor in the asserted amount of $136,063.35.   The Class VI secured tax claim was docketed on or about August 29, 2018 in Durham County and on September 7, 2018 in Wake County.

(2)     Impairment.    This class will be impaired.

(3)     Treatment.      This obligation shall be treated as a secured obligation of the Debtor in an amount equal to the fair market value of the collateral securing the claim.  NCDOR shall retain its liens pursuant to Section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its secured claim is paid in full. The Debtor intends to pay the allowed Class VI claim from the Liquidation Proceeds of the collateral securing its claim in accordance with Section V herein. In the event that a deficiency balance remains after the application of the Liquidation Proceeds, such deficiency shall be treated as a priority unsecured claim in accordance with Section 507(a)(8).

G.     Class VII – Bryn Mawr Equipment Finance, Inc. ("Bryn Mawr").

(1)     Classification. On December 2, 2015, the Debtor entered into an Equipment Finance Agreement (the "Bryn Mawr Contract") with Bryn Mawr for the purchase of multiple pieces of kitchen equipment. The Bryn Mawr Contract provided for sixty (60) monthly payments in the amount of $668.52.  The Bryn Mawr Contract provides for interest at the annual rate of 11.37%.  According to the proof of claim (POC No. 3) filed by Bryn Mawr on October 3, 2018, the value of the equipment as of the Petition Date was $88,100.00 and the amount owed as of the petition date was $17,448.37.  This loan is secured by a properly perfected UCC-1 Financing Statement.

(2)     Impairment.    This class will be impaired.

(3)     Treatment.      This obligation shall be treated as a fully secured obligation of the Debtor in the amount of $17,448.37.  This creditor shall retain its lien pursuant to Section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until such secured claim is paid in full.  The Debtor shall amortize the secured claim over a period of sixty (60) months, with interest accruing at 5.00% per annum.  Payments of $329.27 shall commence on the fifteenth (15th) day of the first full month following the Effective Date. This note shall be treated as a current, non-default loan. The outstanding balance shall be calculated on a non-default basis and shall be reduced by any post-petition payments.

The Debtor shall continue to remit payments to the Class VII creditor until such time as the Cary Property is sold.  Upon closing, if the purchaser so elects, the Debtor shall assign the plan obligation to the purchaser or provide the purchaser the opportunity to purchase the collateral. Otherwise, the Debtor shall surrender the collateral securing the claim at such time.  In the event of surrender, the Class VII creditor shall have the right to file a deficiency claim within sixty (60)

days of surrender following disposition of the collateral.

        H.      <u>Class VIII – Ibis Capital Group, LLC dba NuGrowth dba Susquehanna ("Ibis").</u>

        (1)     <u>Classification</u>.  On March 28, 2016, the Debtor entered into a Merchant Agreement (the "Ibis Contract") with Ibis for an advanced loan in the amount of $150,500.00. The Ibis Contract provided for weekly payments in the amount of $6,831.00.  The Ibis Contract provides for interest at the annual rate of 10%.  The Merchant Agreement purposed to allow Ibis a purchase and sale of future receivables of the Debtor. The Class VIII creditor failed to file a proof of claim within the time frame set by this Court, namely January 22, 2019.  According to the Debtor's schedules, Ibis was owed $115,123.00 on the Petition Date.

        (2)     <u>Impairment</u>.  This class will be impaired.

        (3)     <u>Treatment</u>.  In accordance with 11 U.S.C. §552, and applicable bankruptcy code priorities, any allowed claim in this class shall be deemed a fully unsecured claim and treated in Class XIII herein.

        I.      <u>Class IX – Key Equipment Finance ("Key Equipment").</u>

        (1)     <u>Classification</u>.  On July 6, 2015, the Debtor entered into a Lease Agreement (the "Key Contract") with Key Equipment for Fitness –Precor Assurance Cardio and Miscellaneous Strength Equipment. The Key Contract provided for an initial payment of $6,384.19 followed by 47 monthly payments in the amount of $646.37.  Further, the Key Contract provided for a "$1.00 buyout" option at the end of the contract term.  According to the proof of claim (POC No. 14) filed by Key Equipment on November 6, 2018, the amount owed as of the petition date was $11,514.81. This loan is secured by a properly perfected UCC-1 Financing Statement

        (2)     <u>Impairment</u>.  This class will be impaired.

        (3)     <u>Treatment</u>.  This obligation shall be treated as a fully secured obligation of the Debtor in the amount of $11,514.81.  This creditor shall retain its lien pursuant to Section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until such secured claim is paid in full.  The Debtor shall amortize the secured claim over a period of sixty (60) months, with interest accruing at 5.00% per annum.  Payments of approximately $217.30 shall commence on the fifteenth (15th) day of the first full month following the Effective Date. This note shall be treated as a current, non-default loan.  The outstanding balance shall be calculated on a non-default basis and shall be reduced by any post-petition payments.

        The Debtor shall continue to remit payments to the Class IX creditor until such time as the Cary Property is sold.  Upon closing, if the purchaser so elects, the Debtor shall assign the plan obligation to the purchaser or provide the purchaser the opportunity to purchase the collateral. Otherwise, the Debtor shall surrender the collateral securing the claim at such time.  In the event of surrender, the Class VII creditor shall have the right to file a deficiency claim within sixty (60) days of surrender following disposition of the collateral.

J.      Class X – US Bank Equipment Finance ("US Bank").

(1)      Classification. On September 19, 2015, the Debtor entered into an Equipment Finance Agreement (the "US Bank Contract") with US Bank for multiple pieces of kitchen equipment in the original principal amount of $141,233.31. The US Bank Contract provided for sixty (60) monthly payments in the amount of $2,862.80, in addition to an advance payment of $5,725.60. According to the proof of claim (POC No. 19) filed by US Bank on December 21, 2018, the value of the collateral as of the Petition Date was $10,000.00, resulting in a secured claim of $10,000 and an unsecured claim of $54,542.96. This loan is secured by a properly perfected UCC-1 Financing Statement

(2)      Impairment. This class will be impaired.

(3)      Treatment.      This obligation shall be treated as a fully secured obligation of the Debtor in the amount of $10,000.00. This creditor shall retain its lien pursuant to Section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until such secured claim is paid in full. The Debtor shall amortize the secured claim over a period of sixty (60) months, with interest accruing at 5.00% per annum. Payments of approximately $188.71 shall commence on the fifteenth (15th) day of the first full month following the Effective Date. This note shall be treated as a current, non-default loan. The outstanding balance shall be calculated on a non-default basis and shall be reduced by any post-petition payments. The unsecured claims of $54,542.96 shall be treated in Class XIII herein.

The Debtor shall continue to remit payments to the Class X creditor until such time as the Cary Property is sold. Upon closing, if the purchaser so elects, the Debtor shall assign the plan obligation to the purchaser or provide the purchaser the opportunity to purchase the collateral. Otherwise, the Debtor shall surrender the collateral securing the claim at such time. In the event of surrender, the Class X creditor shall have the right to file a deficiency claim within sixty (60) days of surrender following disposition of the collateral.

K.      Class XI – Xeros, Inc. ("Xeros").

(1)      Classification. On November 16, 2015, the Debtor entered into a Master Equipment Agreement (the "Xeros Contract") with Xeros for two Xeros Washing Machines and two Xeros Dryers. The Xeros Contract provided for sixty (60) monthly payments in the amount of $1,950. The Xeros Contract provided in paragraph 18, that the equipment could be purchased for $1.00 at the end of the contract term. According to the Debtor's schedules, the outstanding amount owed to Xeros on the Petition Date was $27,135.

(2)      Impairment. This class will be impaired.

(3)      Treatment.      This obligation shall be treated as a secured obligation of the Debtor in the amount of $15,000.00. This creditor shall retain its lien pursuant to Section

1129(b)(2)(A)(i)(I) of the Bankruptcy Code until such secured claim is paid in full. The Debtor shall amortize the secured claim over a period of sixty (60) months, with interest accruing at 5.00% per annum. Payments of approximately $283.07 shall commence on the fifteenth (15th) day of the first full month following the Effective Date. This note shall be treated as a current, non-default loan. The outstanding balance shall be calculated on a non-default basis and shall be reduced by any post-petition payments. Any unsecured deficiency balance shall be treated in Class XIII, General Unsecured Claims, hereunder.

The Debtor shall continue to remit payments to the Class XI creditor until such time as the Cary Property is sold. Upon closing, if the purchaser so elects, the Debtor shall assign the plan obligation to the purchaser or provide the purchaser the opportunity to purchase the collateral. Otherwise, the Debtor shall surrender the collateral securing the claim at such time. In the event of surrender, the Class XI creditor shall have the right to file a deficiency claim within sixty (60) days of surrender following disposition of the collateral.

     L.    Class XII – Judgment Creditors.

     (1)    Classification. Class XII includes any creditor holding a claim secured by a non-avoidable judgment lien against the Debtor's property.

     (2)    Impairment. This class will be impaired.

     (3)    Treatment. Holders of claims in this class shall retain their lien pursuant to Section 1129(b)(2)(A)(i)(1) of the Bankruptcy Code until their secured claim is paid in full and shall be treated as secured to the extent of the value of property subject to such liens. Holders of claims in the class shall receive distributions from available Liquidation Proceeds in accordance with the priority of their lien. To the extent that such asserted claims are unsecured or undersecured, such unsecured portion shall be treated in Class XIII herein.

     M.    Class XIII – General Unsecured Claims.

     (1)    Classification. This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's Petition or as otherwise approved by the Court.

     (2)    Impairment. This class will be impaired.

     (3)    Treatment. The approximate total of known unsecured claims is $3,562,226.54, prior to any potential claim objections. Creditors in this class shall receive Liquidation Proceeds remaining after satisfaction of all secured creditor claims, administrative expenses, and priority claims. Payments shall commence once the Liquidation Proceeds have been received by the disbursing agent and thirty (30) days after the resolution of all asserted claims. In addition, any available Chapter 5 actions shall be pursued in accordance with Section V, herein. All distributions to this class shall be made on a pro rata basis.

N.    Class XIV – Equity Security Holders.

(1)    Classification.  This class consists of the shareholders of the Debtor as follows:

Colin Crossman – 39.44% membership interest
Deanna Crossman- 41.02% membership interest
David Gardner- 2.02% membership interest
Andy Albright- 0.23% membership interest
Ashworth Family LP- 0.68% membership interest
Bridgeport Civil- 0.55% membership interest
Bridgeport GC- 0.99% membership interest
Cana Investments- 0.45% membership interest
Christine Hu- 2.27% membership interest
David Schantz- 0.45% membership interest
Dina Properties, LLC- 0.27% membership interest
Elizabeth Peters- 0.36% membership interest
Eno Ventures, LLC 0.32% membership interest
Eric Porter- 0.51% membership interest
Erik Fredrick Revocable Trust- 0.59% membership interest
Howard Glicksman- 0.23% membership interest
Jeff Schenk- 0.34% membership interest
John Staddon- 0.23% membership interest
Justin Thomas- 0.23% membership interest
Keleher Family Irrevocable Trust- 0.68% membership interest
Kim R. Crossman- 1.05% membership interest
Lemon & Lemon Investments, LLC- 0.36% membership interest
Oral Technologies- 0.23% membership interest
Pat Blaser- 0.23% membership interest
Preservation II, Inc.- 0.45% membership interest
Reed Frankel- 0.45% membership interest
Robert Eubanks- 0.23% membership interest
Sanyin Siang- 0.27% membership interest
Sheila Ogle- 0.23% membership interest
Sunstone Growth Fund I, LLC- 2.96% membership interest
Haley Taylor - 0.25% membership interest
Venepalli Living Trust- 0.27% membership interest
Virucha, LLC- 0.23% membership interest
Vito Tanzi- 0.23% membership interest
White Oak Pharmacy, Inc.- 0.68% membership interest

(2)    Impairment.    This class will be unimpaired.

(3)    Treatment.      The equity security holders listed above shall retain their ownership
interests upon confirmation of the Debtor's Plan.  The equity security holders shall not receive any
distributions or retain any value on account of their interests in the Debtor unless and until all

senior classes of creditors are paid.

## V. MEANS OF EXECUTION

A.    The Debtor shall make payments under the Plan from revenue generated by the continued operation of the Debtor's business and from the Liquidation Proceeds.

B.    Marketing and Sale of Assets.  The Debtor shall market and sell the real property located at 204 N. Buchanan Boulevard, Durham, North Carolina ("Durham Property") and 301 South Academy Street, Cary, North Carolina ("Cary Property"), free and clear of all liens, claims, encumbrances and interests with such liens, claims, encumbrances, and interests to attach to the proceeds of sale in accordance with Bankruptcy Code priorities.  The Debtor will continue its best efforts to obtain and consummate, pursuant to Bankruptcy Court Order, the private sale of the Durham Property and Cary Property as follows:

(1) The Property shall be marketed by a court-approved licensed real estate broker.  The Property shall be marketed free and clear of all liens, claims, encumbrances, and interests, with all liens, claims, encumbrances, and interests being transferred to the proceeds of sale. An application to employ a broker with respect to the Cary Property shall be filed within seven days of the Plan of Reorganization.

(2) The marketing and sale of the Property shall be conducted in a manner that maximizes value for all creditors and results in the realization of fair market value.  The Marketing Period shall be placed under seal with the Court to assure all creditors that the Debtor will obtain fair market value for the real property.

(3) Right of First Refusal. In the event the Debtor decides to sell the Cary Property (real or personal property) and/or business operations (hotel and/or food and beverage), the Debtor shall provide the Town of Cary with notice and written copies of all acceptable offers to purchase the same and the Town shall have fifteen (15) days from the Town's receipt of such offer to submit an offer that the Debtor must accept or reject within ten (10) days.  If the Debtor rejects the Town's offer, the Town may request an expedited hearing with the Court to determine the highest and best offer.  If the Court or the Debtor deems the Town's offer is equivalent, the Town's offer shall be accepted.  The Town shall have the right to assign any such contract in its sole discretion.  The Debtor shall provide a copy of any written offers to the Town's counsel within five (5) days of receipt.

C.    Distribution of Proceeds.  The Liquidation Proceeds shall be distributed as follows:

(1) First, to pay all costs of sale or collection, associated quarterly fees, and 11 U.S.C. § 506(c) expenses approved by the Court;

(2) Second, to allowed administrative expenses, including reservation for capital gains taxes generated by the sale of the Debtor's assets;

(3) Third, the net proceeds remaining after the distributions described above shall be used to satisfy the claims of secured creditors holding liens against Estate property in accordance with applicable bankruptcy code priorities;

(4) Fourth, the net proceeds remaining after the distribution described above shall be used to satisfy priority claims; and

(5) Fifth, the net proceeds remaining after the distributions described above shall be distributed to holders of General Unsecured Claims, *pro rata*, up to the full amount of such allowed claims; and

(6) Sixth, the net proceeds remaining after the distributions described above shall be distributed to the equity security holders.

D.     The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

E..     The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

F.     <u>Default</u>. If not otherwise specified within each class treatment, the Debtor shall have thirty (30) days to cure any payment default upon written notice from the creditor to Debtor.

G.     Confirmation of this Plan shall constitute a finding that the Debtor does not waive, release or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and ,any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548 and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan.  Further, the Debtor retains its rights to assert and pursue all claims under 11 U.S.C. §542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.  The Debtor will continue to pursue the payment made to Mt. Charleston Landlord, LLC in the prepetition amount of approximately $149,305.00.  On a post-petition basis, the Debtor has recovered $5,000.00 from Mt. Charleston Landlord, LLC.

H.      Administrative claims unpaid on the Effective Date will be paid from funds on hand, from Liquidation Proceeds or as the parties otherwise agree.

I.      All objections to claims, fee applications and adversary proceedings will be filed with the Court within sixty (60) days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.  Further, no professional shall be required to seek Court approval for fees incurred following the entry of the Order Confirming Plan.

J.      Injunction.  From and after the Confirmation Date, all holders of "Claims" (including, without limitation, Secured Claims, General Unsecured Claims, and all Priority Claims) against the Debtor and the Debtor in Possession are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, or the Assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Assets, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Clams shall be entitled to enforce their rights under the Plan.

K.      Revocation of Plan.  The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation order.  If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

L.      Authority of the Debtor.  The Debtor shall have the authority to implement any term or provisions over this Plan.  To the extent that any right is granted to the Debtor under the Plan, then the Debtor shall have authority for so long as the corporation is in existence to carry out any and all acts necessary to fulfill the terms of the Plan.  Any authority granted to the Debtor pursuant to this Plan, shall be construed as authority granted to the Debtor.

M.      Exemption from stamp tax or transfer tax.  Any transfers done pursuant to the confirmed Plan shall not be subject to any stamp tax or similar tax, pursuant to 11 U.S.C. §1146.

N.      Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a final Order of the Court.

O.    Unclaimed Property.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim.  Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.


## VI.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan.  The Debtor, upon full payment as called for under any notes and deeds of trust, shall be entitled to have the notes marked paid and satisfied and the deeds of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## VII.  PROVISIONS GOVERNING DISTRIBUTIONS

A.    Delivery of Distributions in General.  Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.    Distribution Dates.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date, unless otherwise stated herein.

## VIII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as specified in this Plan or as otherwise set forth in separate Motions before this Court, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or otherwise approved by Orders of the Court are hereby specifically rejected; provided, however that any and all agreements between the Debtor and any party with respect to the reservation of a room or facility owned by the Debtor are hereby assumed.


## IX.  ACCEPTANCE OR REJECTION OF PLAN;
## EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.    Each Impaired Class Entitled to Vote Separately.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.  Acceptance by a Class of Creditors.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.  Claimants Entitled to Vote.  Holders of impaired claims shall be entitled to vote if:

(1)  Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2)  Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)  Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)  Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.  Confirmation Hearing.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.  Acceptances Necessary to Confirm the Plan.  At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor were liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.  Confirmation of Plan Without Necessary Acceptances.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court

must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Section IX herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

## X.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XI.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1. to determine any and all objections to the allowance of claims and/or interests;

2. to determine any and all applications for allowance of compensation for periods prior to the Confirmation Date;

3. to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4. to determine all controversies and disputes arising under or in connection with the Plan;

5. to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6. to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7. to determine such other matters and for such other purposes as may be provided for in the confirmation order;

8. to determine all disputes regarding property of the estate;

9. to establish and adjust procedures for the orderly administration of the estate;

10. to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11. to replace the Debtor-in-Possession with a Trustee for good cause shown.

## XII. <u>MISCELLANEOUS PROVISIONS</u>

A. <u>Survival of Terms</u>. The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B. <u>Successors Bound</u>. This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C. <u>Controlling Law</u>. This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D. <u>Further Assurance</u>. If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

(this space intentionally left blank)

Respectfully submitted, this the 19th day of March, 2019.

s/Rebecca F. Redwine
JASON L. HENDREN
N.C. State Bar #26869
REBECCA F. REDWINE
N.C. State Bar #37012

HENDREN, REDWINE & MALONE, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone:  (919) 420-0941
Facsimile:  (919) 420-0475
Email:  rredwine@hendrenmalone.com
Attorneys for Debtor

MEMENTO MORI, LLC

s/Colin Crossman

Colin Crossman, Managing Member

## CERTIFICATE OF SERVICE

I, Rebecca F. Redwine, 4600 Marriott Drive, Suite 150, Raleigh, North Carolina 27612, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the 19th day of March, 2019, I served copies of the foregoing document on the parties listed below, either electronically or by depositing a copy of the same in the United States mail bearing sufficient postage.

I certify under penalty of perjury that the foregoing is true and correct.

This the 19th day of March, 2019.

s/Rebecca F. Redwine
JASON L. HENDREN
N.C. State Bar #26869
REBECCA F. REDWINE
N.C. State Bar #37012

HENDREN, REDWINE & MALONE, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
Email: rredwine@hendrenmalone.com
Attorneys for Debtor

TO:

Brian Behr                                          **(via CM/ECF)**
Office of the Bankruptcy Administrator


Memento Mori, LLC
Attn: Colin Crossman
301 S. Academy Street
Cary, NC 27511