**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **MEMENTO MORI, LLC** | ) | **Case No. 18-04661-5-DMW** |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |

**DISCLOSURE STATEMENT**
**March 19, 2019**

JASON L. HENDREN
N.C. State Bar #26869
REBECCA F. REDWINE
N.C. State Bar #37012

Attorneys for Debtor
HENDREN, REDWINE & MALONE, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com

# TABLE OF CONTENTS

I. Introduction................................................................................................3
   A. Purpose of This Document......................................................................3
   B. Deadlines for Voting and Objecting
      Date of Plan Confirmation Hearing .........................................................4

II. Classification and Treatment of Classes of Claims and Interests .......................4

   A. What is the Purpose of the Plan of Reorganization.....................................4
   B. Administrative Expenses and Tax Claims.................................................4
      1. Administrative Costs........................................................................5
      2. Priority Tax Claims .........................................................................5
   C. Classes of Claims and Equity Interests ...................................................5
      1. Class of Priority Unsecured Claims ...................................................5
      2. Class of Secured Claims...................................................................5
      3. Class of General Unsecured Claims....................................................5
      4. Class of Equity Interest Holders .......................................................5

III. History and Post-Petition Operations..........................................................6

IV. Treatment of Executory Contracts and Unexpired Leases.................................7

V. Means of Implementation and Execution of the Plan .......................................7

VI. Acceptance or Rejection of Plan;
    Effective of Rejection by an Impaired Class ....................................................10

VII. "Cramdown" for Impaired Creditors Not Accepting the Plan .........................11

VIII. Disclaimer........................................................................................12

IX. Payments Under Plan are in Full and
    Final Satisfaction of Debt ...........................................................................12

X. Potential Material Federal Tax Consequences................................................13
   A. Tax Consequences to the Debtor............................................................13
   B. Tax Consequences to Creditors .............................................................14

XI. Provisions for Voting on a Plan ................................................................14

XII. Acceptance and Confirmation..................................................................15

XIII. Effect of Confirmation .........................................................................18

XIV. Recommendation and Conclusion ...........................................................18

XV. Other Sources of Information Available to
    Creditors and Parties in Interest....................................................................18

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **MEMENTO MORI, LLC** | ) | **Case No. 18-04661-5-DMW** |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |

**DISCLOSURE STATEMENT**

Pursuant to the provisions of Section 1125(b) of the Bankruptcy Code, the Debtor hereby submits the following information:

**I.  INTRODUCTION**

**A.  Purpose of This Document**

The purpose of this Disclosure Statement ("Disclosure Statement") is to provide each holder of a claim against the Debtor with adequate information about the Debtor and the Debtor's Plan of Reorganization so that each holder of a claim may make an informed decision about whether to accept or reject the Plan.  Attached hereto as **Exhibits "A"** and **"B"** are summaries of the Debtor's assets and liabilities.  **Exhibit "C"** is the Liquidation Analysis of the Debtor.  **Exhibit "D"** is a twelve month projection of the Debtor's operation.

This Disclosure Statement describes:

1.  The Debtor and significant events during the bankruptcy case;
2.  Who can vote on or object to the Plan;
3.  What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan;
4. Why the Debtor believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation; and
5. The effect of confirmation of the Plan.

The Plan describes:

1.  How the Debtor proposes to treat claims or equity interest of the type you hold (*i.e.,* what you will receive on your claim or equity interest if the Plan is confirmed); and
2.  The classification of claims and interests and the treatments of the classes of claims and interests, including a description of whether each class is impaired or unimpaired.

**B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

The Court has not yet confirmed the Plan.  This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1.    *Time and Place of the Hearing to Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will be scheduled by the Court and you will receive an Order setting forth the date, time and place.

2.    *Deadline for Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the Plan, vote on the enclosed ballot and return the ballot in the enclosed envelope to Hendren, Redwine & Malone, PLLC, 4600 Marriott Drive, Suite 150, Raleigh, NC 27612 by 5:00 p.m. on the ballot deadline.  See information below for a discussion of voting eligibility requirements.

Your ballot must be received by the date set by the Court or it will not be counted.

3.    *Deadline For Objecting to the Adequacy of Disclosure and Confirmation of the Plan*

Objections to this Disclosure Statement or to the confirmation of the Plan must be filed with the Court and served upon the Debtor's attorney by the date set by the Court.

## II.  CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

**The Debtor's Plan of Reorganization ("Plan"), which accompanies this Disclosure Statement, is incorporated herein by reference.  Section IV of the Plan describes the classification of claims and interests and the treatment of the classes of claims and interests, including a description of whether each class is impaired or unimpaired.**

**A.  What is the Purpose of the Plan of Reorganization?**

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment that each class will receive.  The Plan also states whether each class of claims or equity interests in impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

**B.  Administrative Expenses and Tax Claims**

The following types of claims are addressed in the Plan:

1. *Administrative Costs*

Administrative costs are costs or expenses of administering the Debtor's Chapter 11 case which are allowed under § 507(a)(2) of the Code. Administrative expenses may also include the value of any goods sold to the Debtor in the ordinary course of business and received within twenty (20) days before the date of the bankruptcy.

2. *Priority Tax Claims*

Priority tax claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of a priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments paid over a period not exceeding five years.

**C. Classes of Claims and Equity Interests**

The following classes are also addressed in the Plan. The Plan describes the proposed treatment that they will receive under the Plan:

1. *Class of Priority Unsecured Claims*

Certain priority claims that are referred to in §§ 507(a)(1), (4), (5), (6) and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept difference treatment.

2. *Class of Secured Claims*

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code. The specific classes are described in Section IV of the Plan.

3. *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code.

4. *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (*i.e.* equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and limited partners. In a limited liability company ("LLC"), the equity interest holders are the members.

## III.  HISTORY AND POST-PETITION OPERATIONS

The Debtor is a North Carolina Limited Liability Company that operates two boutique hotels located in Cary and Durham, North Carolina, respectively.  Prior to filing, the Debtor initiated a pre-petition rollup, which consolidated subsidiaries into the parent company in order to facilitate a global restructure for the benefit of all creditors.

The Debtor's property located in Durham, North Carolina is a bed and breakfast operation by the name of "The King's Daughters Inn".  It has seventeen rooms, three event rooms, a full commercial kitchen and a 4,000 square foot penthouse.  The King's Daughters Inn offers breakfast, afternoon tea and after-dinner drinks.  It is a four star, fully-renovated historic property adjacent to Duke University's campus in Trinity Park.  The website for the bed and breakfast may be found at www.thekingsdaughtersinn.com.

The Cary, North Carolina property, the "Mayton Inn" is a fully operational hotel with forty-five (45) rooms and full service bar and restaurant called "The Verandah".  Both locations offer event space for weddings, corporate events and private parties.  The website for the hotel and restaurant may be found at www.maytoninn.com.

The Mayton Inn experienced a significant delay in opening, due to downtown renovation projects located in the Town of Cary.  After opening in February 2016, the Debtor experienced an unforeseen delay in receiving its certificate of occupancy. This delay had a major impact on the anticipated revenues and impacted the Debtor's ability to convert a high interest construction loan to a low interest permanent loan.  The Debtor sought bridge loans and other sources of funding in order to meet its obligations.  Ultimately, the Debtor's hotel revenues doubled in amount and event bookings increased threefold once the unanticipated delays were addressed.  The Debtor filed this proceeding in order to deal with the economic fallout from these events and to resolve any outstanding claims asserted against it.  Since filing, the Debtor has met or exceeded its projected revenue budgets and has been working closely with its secured creditors, resulting in consensual cash collateral orders since filing.  In addition, the Debtor has continued to book several large events and banquets at the Mayton Inn, as well as weddings and smaller gatherings at the King's Daughters Inn.  In early 2019, a craft brewery venue opened next to the Mayton Inn on Academy Street, which has created an increase in food and beverage sales for the Mayton Inn.  Notwithstanding the continued success of both properties, the Debtor has determined to sell the properties over an orderly marketing period in order to realize fair market value for them and pay creditors as quickly as possible.

Further, pursuant to recent appraisals, the Estate enjoys a substantial equity cushion in both the Durham and Cary properties.  The Debtor has listed the King's Daughters Inn for sale with the Court approved agency, Maverick Partners Realty Services, Inc. and its agent, Chris Burnham.  The Debtor intends to market and sell this property.  Inquiries about the property may be directed to Chris Burnham at cburnham@maverickpartners.com or (919) 225-4778.

In addition, the Debtor intends to market the Mayton Inn.  The Debtor will file an application to employ a broker within seven days of the Plan of Reorganization. Both properties

will be marketed as an on-going concern and sold for fair market value.  During the marketing period, the Debtor will remain fully operational, will continue its positive growth trend, and will operate both hotels in the ordinary course of business.  Several interested parties have approached the Debtor regarding the respective properties and the Debtor is currently assisting with due diligence regarding those inquiries.

On a post-petition basis, the Debtor has complied with all Bankruptcy Rule 4002 requirements as required by the local rules.  The 341 Meeting of Creditors was held on October 23, 2018, an intake conference was completed on October 10, 2018, and the 11(a) status conference was held on September 24, 2018, in conjunction with the Emergency Motions for Use of Cash Collateral and Authority to Pay Pre-Petition Payroll.  Since filing the Bankruptcy Court has approved six interim consent orders allowing for the Debtor's use of cash collateral, pursuant to budgets agreed upon by the Debtor and its four primary secured creditors, who assert a lien on the Debtor's cash collateral.

## IV.  TREATMENT OF EXECUTORY CONTRACTS
## AND UNEXPIRED LEASES

Except as specified in this Plan or as otherwise set forth in separate Motions before this Court, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or otherwise approved by Orders of the Court are hereby specifically rejected; however, this paragraph is not intended to reject and the Debtor specifically assumes all hotel bookings and event contracts.

## V.  MEANS OF IMPLEMENTATION
## AND EXECUTION OF THE PLAN

A.      The Debtor shall make payments under the Plan from revenue generated by the continued operation of the Debtor's business and from the Liquidation Proceeds.

B.      Marketing and Sale of Assets.  The Debtor shall market and sell the real property located at 204 N. Buchanan Boulevard, Durham, North Carolina ("Durham Property") and 301 South Academy Street, Cary, North Carolina ("Cary Property"), free and clear of all liens, claims, encumbrances and interests with such liens, claims, encumbrances, and interests to attach to the proceeds of sale in accordance with Bankruptcy Code priorities.  The Debtor will continue its best efforts to obtain and consummate, pursuant to Bankruptcy Court Order, the private sale of the Durham Property and Cary Property as follows:

(1) The Property shall be marketed by a court-approved licensed real estate broker.  The Property shall be marketed free and clear of all liens, claims, encumbrances, and interests, with all liens, claims, encumbrances, and interests being transferred to the proceeds of sale. An application to employ a broker with respect to the Cary Property shall be filed within seven days of the Plan of Reorganization.

(2) The marketing and sale of the Property shall be conducted in a manner that maximizes value for all creditors and results in the realization of fair market value. The Marketing Period shall be placed under seal with the Court to assure all creditors that the Debtor will obtain fair market value for the real property.

(3) <u>Right of First Refusal.</u> In the event the Debtor decides to sell the Cary Property (real or personal property) and/or business operations (hotel and/or food and beverage), the Debtor shall provide the Town of Cary with notice and written copies of all acceptable offers to purchase the same and the Town shall have fifteen (15) days from the Town's receipt of such offer to submit an offer that the Debtor must accept or reject within ten (10) days. If the Debtor rejects the Town's offer, the Town may request an expedited hearing with the Court to determine the highest and best offer. If the Court or the Debtor deems the Town's offer is equivalent, the Town's offer shall be accepted. The Town shall have the right to assign any such contract in its sole discretion. The Debtor shall provide a copy of any written offers to the Town's counsel within five (5) days of receipt.

      C.    <u>Distribution of Proceeds.</u> The Liquidation Proceeds shall be distributed as follows:

(1) First, to pay all costs of sale or collection, associated quarterly fees, and 11 U.S.C. § 506(c) expenses approved by the Court;

(2) Second, to allowed administrative expenses, including reservation for capital gains taxes generated by the sale of the Debtor's assets;

(3) Third, the net proceeds remaining after the distributions described above shall be used to satisfy the claims of secured creditors holding liens against Estate property in accordance with applicable bankruptcy code priorities;

(4) Fourth, the net proceeds remaining after the distribution described above shall be used to satisfy priority claims; and

(5) Fifth, the net proceeds remaining after the distributions described above shall be distributed to holders of General Unsecured Claims, *pro rata*, up to the full amount of such allowed claims; and

(6) Sixth, the net proceeds remaining after the distributions described above shall be distributed to the equity security holders.

      D.    The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

      E.    The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

F.      Default. If not otherwise specified within each class treatment, the Debtor shall have thirty (30) days to cure any payment default upon written notice from the creditor to Debtor.

G.      Confirmation of this Plan shall constitute a finding that the Debtor does not waive, release or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and ,any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548 and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan.  Further, the Debtor retains its rights to assert and pursue all claims under 11 U.S.C. §542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.  The Debtor will continue to pursue the payment made to Mt. Charleston Landlord, LLC in the prepetition amount of approximately $149,305.00.  On a post-petition basis, the Debtor has recovered $5,000.00 from Mt. Charleston Landlord, LLC.

H.      Administrative claims unpaid on the Effective Date will be paid from funds on hand, from Liquidation Proceeds or as the parties otherwise agree.

I.      All objections to claims, fee applications and adversary proceedings will be filed with the Court within sixty (60) days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.  Further, no professional shall be required to seek Court approval for fees incurred following the entry of the Order Confirming Plan.

J.      Injunction.   From and after the Confirmation Date, all holders of "Claims" (including, without limitation, Secured Claims, General Unsecured Claims, and all Priority Claims) against the Debtor and the Debtor in Possession are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, or the Assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or the Assets, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Clams shall be entitled to enforce their rights under the Plan.

K.      Revocation of Plan.  The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation order.  If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or

release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

L.    <u>Authority of the Debtor</u>.  The Debtor shall have the authority to implement any term or provisions over this Plan.  To the extent that any right is granted to the Debtor under the Plan, then the Debtor shall have authority for so long as the corporation is in existence to carry out any and all acts necessary to fulfill the terms of the Plan.  Any authority granted to the Debtor pursuant to this Plan, shall be construed as authority granted to the Debtor.

M.    <u>Exemption from stamp tax or transfer tax</u>.  Any transfers done pursuant to the confirmed Plan shall not be subject to any stamp tax or similar tax, pursuant to 11 U.S.C. §1146.

N.    Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code.  No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a final Order of the Court.

O.    <u>Unclaimed Property</u>.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim.  Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

# VI.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.    <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holder of claims therein vote separately as a class to accept or reject the Plan.

B.    <u>Acceptance by a Class of Creditors</u>.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.    <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

(1)    Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2)　　　　Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)　　　　Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4)　　　　Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.　　　<u>Confirmation Hearing</u>. The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.　　　<u>Acceptances Necessary to Confirm the Plan</u>. At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.　　　<u>Confirmation of Plan without Necessary Acceptances</u>. The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the Plan, the Debtor hereby requests and moves the court under the provisions outlined in Section VII herein, for confirmation pursuant to the "cramdown" provisions of 1129(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with 1129(b)(2).

## VII. "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests that the Court find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of

claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditors, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## VIII.  DISCLAIMER

All parties are advised and encouraged to read this Disclosure Statement and the Plan in their entirety before voting to accept or reject the Plan or before voting on any other matter as provided for herein.

Statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan itself, the Disclosure Statement, and all exhibits annexed thereto. The statements contained in this Disclosure Statement are made only as of the date hereof.  No assurances exist that the statements contained herein will be correct any time hereafter.

The information contained in this Disclosure Statement is included herein for purposes of soliciting acceptances of the Plan and may not be relied upon for any purpose other than to determine how to vote on the Plan.  No representations concerning the Debtor are authorized by the Debtor other than as set forth in this Disclosure Statement.  Any other representations or inducements made to solicit your acceptance that are not contained in this Disclosure Statement should not be relied upon by you in arriving at your decision to accept or reject the Plan.

With respect to adversary proceedings, contested matters, other actions or threatened actions, this Disclosure Statement shall not constitute or be construed as an admission of any fact or liability, stipulation, or waiver; rather, this Disclosure Statement shall constitute statements made in connection with settlement negotiations.

This Disclosure Statement shall not be admissible in any non-bankruptcy proceeding involving the Debtor or any other party.  Furthermore, this Disclosure Statement shall not be construed to be conclusive advice on the legal effects, including, but not limited to the tax effects, of the Debtor's Plan of Reorganization.  You should consult your legal or tax advisor on any questions or concerns regarding the tax or other legal consequences of the Plan.

The information contained herein is not the subject of a certified audit and formal appraisals. The Debtor's records are dependent upon internal accounting methods.  As a result, valuations and liabilities are estimated.  Although substantial efforts have been made to be complete and accurate, the Debtor is unable to warrant or represent the full and complete accuracy of the information contained herein

## IX.  PAYMENTS UNDER PLAN ARE IN FULL
## AND FINAL SATISFACTION OF DEBT

Except as otherwise provided in Section 1141 of the Bankruptcy Code, or the Plan, the payments and distributions made pursuant to the Plan will be in full and final satisfaction,

settlement, release, and discharge, as against the Debtor, of any and all claims against, and interest in, the Debtor, as defined in the Bankruptcy Code, including, without limitation, any Claim or Equity Interest accrued or incurred on or before the Confirmation Date, whether or not (i) a proof of claim or interest is filed or deemed filed under Section 501 of the Bankruptcy Code, (ii) such Claim or Equity Interest is allowed under Section 501 of the Bankruptcy Code, or (iii) the holder of such Claim or Equity Interest has accepted the Plan.

## X. POTENTIAL MATERIAL FEDERAL TAX CONSEQUENCES

The following discussion is a summary of certain federal income tax aspects of the Plan for general information only. It should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Interest. This discussion does not purport to be a complete analysis or listing of all potential tax factors.

The following discussion is based upon existing provisions of the Internal Revenue Code ("IRC"), existing regulations thereunder, and current administrative rulings and court decisions. No assurance can be given that legislative or administrative changes or court decisions may not be forthcoming which would require significant modification of the statements expressed in this section. Moreover, the tax consequences to holders of the Claims and Interests may vary based upon the individual tax circumstances of each such holder. Nothing herein purports to describe any state, local or foreign tax consequences.

**NO RULING HAS BEEN SOUGHT OR OBTAINED FROM THE IRS WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN AND NO OPINION OF COUNSEL HAS BEEN OBTAINED BY THE DEBTOR WITH RESPECT THERETO. NO REPRESENTATIONS OR ASSURANCES ARE BEING MADE WITH RESPECT TO THE FEDERAL INCOME TAX CONSEQUENCES AS DESCRIBED HEREIN. CERTAIN TYPES OF CLAIMANTS AND INTEREST HOLDERS MAY BE SUBJECT TO SPECIAL RULES NOT ADDRESSSED IN THIS SUMMARY OF FEDERAL INCOME TAX CONSEQUENCES. THERE MAY ALSO BE STATE, LOCAL, OR FOREIGN TAX CONSIDERATIONS APPLICABLE TO A HOLDER OF A CLAIM OR INTEREST, WHICH ARE NOT ADDRESSED HEREIN. EACH HOLDER OF A CLAIM OR INTEREST AFFECTED BY THE PLAN MUST CONSULT, AND RELY UPON, HIS OR HER OWN TAX ADVISOR REGARDING THE SPECIFIC TAX CONSEQUENCES OF THE PLAN WITH RESPECT TO THAT HOLDER'S CLAIM OR INTEREST. THIS INFORMAITON MAY NOT BE USED OR QUOTED IN WHOLE OR IN PART IN CONNECTION WITH THE OFFERING FOR SALE OF SECURITIES.**

### A.    Tax Consequences to the Debtor

Under the IRC, a taxpayer generally must include in gross income the amount of any discharge of indebtedness income realized during the taxable year. Section 108(a)(1)(A) of the IRC provides an exception to this general rule, however, in the case of a taxpayer that is under the jurisdiction of a bankruptcy court in a case brought under the Bankruptcy Code where the discharge of indebtedness is granted by the court or is pursuant to a plan approved by the court, provided that the amount of discharged indebtedness that would otherwise be required to be included in income is applied to reduce certain tax attributes of the taxpayer. Section 108(e)(2) of

the IRC provides that a taxpayer will not realize income from the discharge of indebtedness to the extent that satisfaction of the liability would have given rise to a deduction. As a result of §§ 108(a)(1)(A) and 108(e)(2) of the IRC, the Reorganized Debtor may not recognize any income from the discharge of indebtedness through the chapter 11 case. It is not likely that the confirmation of the plan will have a material effect on the reorganized Debtor. The Debtor is a North Carolina Limited Liability Company and, as elected, is not subject to Federal and State taxation at the company level. All tax consequences related to gains and losses will, therefore, pass through to the Debtor's equity security holders.

### B.     Tax Consequences to Creditors

A Creditor who receives cash or other consideration in satisfaction of any Claim may be required to recognize ordinary income to the Internal Revenue Service or other tax authorities. The impact of such ordinary income, as well as the tax year for which the income will be recognized, will depend upon the individual circumstances of each Claimant, including the nature and manner of organization of the Claimant, the applicable tax bracket for the Claimant, and the taxable year of the Claimant. Each creditor is urged to consult with its tax advisor regarding the tax implications of any payments or distributions under the Plan.

**THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING OR CONSULTATION WITH A TAX ADVISOR. THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CASES, UNCERTAIN. SUCH CONSEQUENCES MAY ALSO VARY BASED UPON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST. ACCORDINGLY, EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.**

CIRCULAR 230 NOTICE: To comply with requirements imposed by the United States Treasure Department and/or IRS, any information regarding any U.S. federal tax matters contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, as advice for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. A formal and thorough written tax opinion would first be required for any tax advice contained in this communication to be used to avoid tax related penalties. Please consult your own tax professional.

## XI.  PROVISIONS FOR VOTING ON A PLAN

A.     <u>Creditors Allowed to Vote and Deadline.</u>  Creditors holding allowed claims are entitled to vote to accept or reject the Debtor's Plan of Reorganization. The Court has fixed a date by which ballots upon the proposed Plan must be filed with counsel for the Debtor as an agent of the Court. Even though a creditor may not choose to vote, or may vote against the Plan, the creditor will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each class of creditors and/or is confirmed by the Court. Creditors who fail to vote

will not be counted in determining acceptance or rejection of the Plan. Allowance of a claim or interest for voting purposes does not necessarily mean that the claim will be allowed or disallowed for purposes of distribution under the terms of the Plan. Any claim to which an objection has been or will be made will be allowed for distribution only after determination by the Court. Such determination of allowed status may be made before or after the Plan is confirmed.

B. <u>Voting Provisions.</u> In order for the Plan to be accepted by the class of creditors holding unsecured claims (Class III under the Plan), creditors that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in the total number of allowed claims of creditors voting on the Plan must accept the Plan. Under certain limited circumstances more fully described in 11 U.S.C. Section 1129(b), the Court may confirm the Plan by a "cramdown" notwithstanding the rejection thereof by more than one-third (1/3) in amount or one-half (1/2) in number of the creditors voting on the Plan. The Debtor intends to seek confirmation under 11 U.S.C. Section 1129(b) in the event any class of creditors rejects the Plan.

C. <u>Representations Limited.</u> No representation concerning the Debtor, particularly regarding future business operations or the value of the Debtor's assets, has been authorized by the Debtor except as set forth in this statement. You should not rely on any other representations or inducements offered to you to secure your acceptance or decide how to vote on the Plan. Any person making representations or inducements concerning acceptance or rejection of the Plan should be reported to counsel for the Debtor.

While every effort has been made to provide the most accurate information available, the Debtor is unable to warrant or represent that all information is without inaccuracy. No known inaccuracies are set forth herein. Further, much of the information contained herein consists of projections of future performance. While every effort has been made to ensure that the assumptions are valid and that the projections are as accurate as can be made under the circumstances, the Debtor has not undertaken to certify or warrant the absolute accuracy of the projections.

## XII. ACCEPTANCE AND CONFIRMATION

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan. The confirmation hearing will be scheduled at a time and place to be determined by the Bankruptcy Court. The confirmation hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the confirmation hearing.

At the confirmation hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. These requirements include determinations by the Bankruptcy Court that (i) the Plan has classified Claims in a permissible manner; (ii) the Plan is in the "best interests" of all Creditors; (iii) the Plan is feasible; (iv) the Plan has been accepted by the requisite number and amount of Creditors in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances; (v) the Plan and its proponent comply with various technical requirements of the Bankruptcy Code; (vi) the Debtor

has proposed the Plan in good faith; (vii) any payments made or promised in connection with the Plan are subject to the approval of the Bankruptcy Court as reasonable; and (viii) the Plan provides specified recoveries for certain priority claims. The Debtor believes that all of these conditions have been or will be met prior to the Confirmation hearing.

      **A.    Classification of Claims**. The Bankruptcy Code requires that a plan place each creditor's claim in a class with "substantially similar" claims. The Debtor believes that the Plan's classification of claims complies with the requirements of the Bankruptcy Code and applicable case law.

      **B.    The Best Interests Test**. Notwithstanding acceptance of the Plan in accordance with Section 1126 of the Bankruptcy Code, the Bankruptcy Court must find, whether or not any party in interest objects to Confirmation, that the Plan is in the best interests of the Creditors. Bankruptcy courts have generally defined "best interests" as the Bankruptcy Code's requirement that, under any plan of reorganization, each member of an impaired class of creditors must receive or retain, on account of its claim, property of a value, as of the effective date of the plan, that is not less than the amount such creditor would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan is in the best interests of all Creditors.

      To determine what the Creditors would receive if the Debtor was liquidated under chapter 7, the dollar amount that would be generated from the liquidation of the Debtor's assets in a chapter 7 liquidation case needs to be considered. The amount that would be available for the satisfaction of Claims would consist of the Debtor's interest in the net proceeds resulting from the disposition of the Estate's assets, augmented by the Debtor's interest in the cash on hand. The Estate's interest would be further reduced by the amount of any Secured Claims, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the liquidation of the Debtor's estate. These calculations are set forth in a liquidation analysis attached to this Disclosure Statement.

      The costs of liquidation under chapter 7 would become Administrative Claims with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a chapter 7 trustee, as well as those which might be payable to attorneys, financial advisors, appraisers, accountants and other professionals that such a trustee may engage to assist in the liquidation. After satisfying Administrative Claims arising in the course of the chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time the Case was pending under chapter 11, including compensation for the Debtor, attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor.

      For the reasons discussed above, the Debtor has concluded that the Plan provides Creditors with a recovery that has a present value at least equal to the present value of the distribution that such Person would receive if the Estate were liquidated under chapter 7 of the Bankruptcy Code.

**BECAUSE THE LIQUIDATION ANALYSIS AND THE PROJECTIONS ARE BASED UPON A NUMBER OF ASSUMPTIONS AND ARE INHERENTLY SUBJECT TO**

SIGNIFICANT UNCERTAINTIES THAT ARE BEYOND THE DEBTOR'S CONTROL, THERE CAN BE NO ASSURANCE THAT THE LIQUIDATION VALUES WOULD, IN FACT, BE REALIZED IN THE EVENT OF A LIQUIDATION UNDER CHAPTER 7 OR THAT THE FINANCIAL PROJECTIONS WILL BE REALIZED.  ACTUAL RESULTS MAY BE HIGHER OR LOWER THAN THOSE SHOWN IN THE EXHIBITS, POSSIBLY BY MATERIAL AMOUNTS.

C.      **Feasibility of the Plan**.  Section 1129(a)(11) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtor or any other successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.  The Debtor believes that it will be able to meet its obligations under the Plan.

D.      **Confirmation.**  The Plan may be confirmed if the holders of impaired Classes of Claims accept the Plan.  Classes of Claims that are not impaired are deemed to have accepted the Plan.  A Class is impaired if the legal, equitable or contractual rights attaching to the Claims or interests of that Class are modified other than by curing defaults and reinstating maturities or by full payment in cash.

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by the holders of two-thirds in dollar amount and a majority in number of allowed claims in that class. This calculation includes only those holders of claims who actually vote to accept or reject the Plan.  Votes on the Plan are being solicited only from holders of Allowed Claims in impaired Classes who are expected to receive distributions.

In the event that an impaired Class does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's request if (i) all other requirements of Section 1129(a) of the Bankruptcy Code are satisfied, and (ii) as to each impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class.  **THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTERESTS OF ALL CREDITORS AND STRONGLY RECOMMENDS THAT ALL PARTIES ENTITLED TO VOTE CAST THEIR BALLOTS IN FAVOR OF ACCEPTING THE PLAN.**  Nevertheless, the Debtor has requested that the Bankruptcy Court confirm the Plan over the rejection of any non-accepting Class in the event all other elements of Section 1129(a) of the Bankruptcy Code are satisfied.

A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class receives payments in excess of that which it is legally entitled to receive.  The Debtor believes that, under the Plan, all holders of impaired Claims are treated in a manner that is consistent with the treatment of other holders of Claims with which any of their legal rights are intertwined.  Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims.

The condition that a plan be "fair and equitable" generally requires that an impaired class that has not accepted the plan must receive certain specified recoveries, as set forth in Section

1129(b)(2) of the Bankruptcy Code. The Debtor believes that the Plan meets the thresholds specified in this section of the Bankruptcy Code.

## XIII. EFFECT OF CONFIRMATION

A.       Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B.       Injunction. As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or any hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interest, debtors, or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, aware, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or  continuing, in any manner or in any place, any action that does not comply with  or is inconsistent with  the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims it may have against any party in interest.

## XIV. RECOMMENDATION AND CONCLUSION

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE GREATEST AND EARLIEST RECOVERY TO CREDITORS AND IS IN THE BEST INTEREST OF CREDITORS, THEREFORE, THE DEBTOR RECOMMENDS THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

## XV. OTHER SOURCES OF INFORMATION AVAILABLE TO CREDITORS AND PARTIES IN INTEREST

Additional motions, affidavits, orders or other documentation which might be of interest to any holder of a claim against the Debtor in this proceeding are shown on the docket sheet maintained by the Clerk's office. Copies of the docket sheet and actual items can be obtained from the office of the Clerk of the Bankruptcy Court:

Stephanie Butler, Clerk
U.S. Bankruptcy Court
P.O. Box 791
Raleigh, NC  27602
(919) 856-4752

Respectfully submitted, this the 19th day of March, 2019.

s/Rebecca F. Redwine
JASON L. HENDREN
N.C. State Bar #26869
REBECCA F. REDWINE
N.C. State Bar #37012

HENDREN, REDWINE & MALONE, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone:  (919) 573-1422
Facsimile:  (919) 420-0475
Email:  jhendren@hendrenmalone.com
Attorneys for Debtor

MEMENTO MORI, LLC

s/Colin Crossman
Colin Crossman, Managing Member

## CERTIFICATE OF SERVICE

I, Rebecca F. Redwine, 4600 Marriott Drive, Suite 150, Raleigh, North Carolina 27612, certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age;

That on the 19th day of March, 2019, I served copies of the foregoing document on the parties listed below, either electronically or by depositing a copy of the same in the United States mail bearing sufficient postage.

I certify under penalty of perjury that the foregoing is true and correct.

This the 19th day of March, 2019.

s/Rebecca F. Redwine
JASON L. HENDREN
N.C. State Bar #26869
REBECCA F. REDWINE
N.C. State Bar #37012

HENDREN, REDWINE & MALONE, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
Email: rredwine@hendrenmalone.com
Attorneys for Debtor

TO:

Brian Behr                              **(via CM/ECF)**
*Office of the Bankruptcy Administrator*

Memento Mori, LLC
Attn: Colin Crossman
301 S. Academy Street
Cary, NC 27511

## EXHIBIT "A"
## ASSETS

| | Market Value | Notes |
|---|---|---|
| Cash on hand | $ 2,500.00 | |
| DIP KDI Operating | $ 90,641.96 | |
| DIP KDI Deposit | $ 9,179.07 | |
| DIP KDI Tax | $ 29,298.96 | |
| DIP Mayton Operating | $ 36,001.73 | |
| DIP Mayton Tax | $ 3,530.62 | |
| DIP Mayton Food and Beverage | $ 29,983.12 | |
| DIP Mayton Room Fees | $ 30,786.94 | |
| DIP Payroll | $ 1,557.94 | |
| 26.58% Interest in Mount Charleston Landlord, LLC | $ - | |
| Restaurant Food and Liquor Inventory | $ 39,000.00 | |
| King's Daughers Inn Office Equipment | $ - | included within real estate appraisal |
| Mayton Inn Office Equipment | $ - | included within real estate appraisal |
| The Verandah Kitchen Equipment | $ - | included within real estate appraisal |
| The Mayton Inn Furniture | $ - | included within real estate appraisal |
| Kings Daughers Inn Furniture | $ - | included within real estate appraisal |
| Mayton Inn, 301 S. Academy Street, Cary, NC | $ 17,400,000.00 | |
| The King's Daughers Inn, 205 N. Buchanan Blvd., Durham, NC | $ 4,935,000.00 | |
| 304 Mayton View Lane, Cary, NC | $ - | included within real estate appraisal |
| .20 acrew lot located at 106 East Park Street, Cary, NC | $ - | included within real estate appraisal |
| US Trademarks | $ 950.00 | |
| website urls for KDI, Mayton and Verhandah | $ 100.00 | |
| Customer List | $ 100.00 | |
| Note from Mt. Charleston Landlord, LLC | $ 139,305.00 | |
| | **$ 22,747,935.34** | |

EXHIBIT "B"
LIABILITIES

| LIABILITIES | CLAIM # | DISPUTED | | AMOUNT |
|---|---|---|---|---|
| **Cost of Administration** | | | | |
| Hendren, Redwine & Malone, PLLC | | est | $ | 100,000.00 |
| | | | | |
| **TOTAL COST OF ADMINISTRATION CLAIMS:** | | | **$** | **100,000.00** |
| | | | | |
| **Priority Claims** | | | | |
| IRS | 27 | | $ | 272,314.84 |
| Dept of Employment Security | | | $ | - |
| Durham County Tax | | | $ | 7,297.64 |
| Durham County Tax | | | $ | 13,119.61 |
| NCDOR | 20 | | $ | 33,764.16 |
| NC Dept. of Commerce | 41 | | $ | 12,197.49 |
| NC Dept. of Commerce | 42 | | $ | 2,651.57 |
| Wake County Dept of Rev | 29 | | $ | 93,561.62 |
| | | | | |
| **TOTAL PRIORITY CLAIMS:** | | | **$** | **434,906.93** |
| | | | | |
| **Secured Claims** | | | | |
| American Express Bank, FSB | | X | $ | - |
| Amercian Express Bank, FSB | | X | $ | - |
| Bryn Mar Equipment Finance, Inc | 3 | | $ | 17,448.37 |
| Ibis Caital Group, LLC dba Nugrowth/Susquehanna | | | $ | - |
| Key Equipment Finance | 14 | | $ | 11,514.81 |
| Mercantile Capital Corp | 30, 31, 32, 33 | | $ | 5,315,027.90 |
| NC Department of Revenue | 21 | | $ | 136,063.35 |
| Pinnacle Bank | 12 | | $ | 3,344,933.80 |
| Town of Cary | 35 | | $ | 1,179,674.00 |

| | | | |
|---|---|---|---|
| Town of Cary | 36 | | $ 1,771,755.00 |
| US Bank Equipment Finance | 19 | | $ 10,000.00 |
| American Lending Center/USEDLC | 17 | | $ 6,349,841.67 |
| Xerox Inc. | 24 | | $ 48,750.00 |
| **TOTAL SECURED CLAIMS:** | | | **$ 18,185,008.90** |

**Unsecured Claims**

| | | | |
|---|---|---|---|
| Allen Grading Co., Inc. | | | $ 60,419.38 |
| Allen Wilcox | 7 | | $ 15,415.45 |
| Amadeus Hospitality Americas, Inc. | | X | $ - |
| American Express | | | $ 4,786.97 |
| Ashworth Family Limited Partnership | | | $ 25,000.00 |
| Brian S. Garrett | 40 | | $ 61,823.53 |
| Budd-Piper Roofing, Inc. | | X | $ - |
| Catherine Jernigan | | | $ 27,803.47 |
| Citi Bank | | | $ 33,196.43 |
| Colin and Deanna Crossman | | X | $ 317,443.21 |
| Conde Nast Publications, LTD | | | $ - |
| Courtesy Products | | | $ 889.18 |
| Crave Interactive | 25 | | $ 2,583.37 |
| David Gardner | | | $ 127,057.73 |
| David Gardner | | | $ 10,000.00 |
| Dina Properties, LLC | | | $ 10,000.00 |
| Dixon Hughes Goodman, LLP | | | $ 10,615.56 |
| DN Kisley PE | | X | $ - |
| Dr. Craig Stevens | 6 | | $ 70,668.12 |
| Duke Chronicle | | | $ 340.00 |
| Duke Energy | 26 | | $ 4,226.89 |
| Duke Energy Progress | | | $ - |
| EcoLab | | | $ 336.53 |
| Expedia | | | $ - |
| Falcon Engineering | 1 | X | $ 6,682.25 |
| FLSA | 10 | X | $ 4,198.95 |
| Fresh Point | | | $ 2,314.65 |

| Name | | Amount |
|---|---|---|
| Great American Insurance Group | 15 | $ 14,824.81 |
| Hal K. Bowman | 43 | $ 73,880.62 |
| Herbert A. Gardner, Jr. | | $ 21,364.56 |
| Herbert A. Gardner, Jr. | | $ 50,000.00 |
| Hutchison, PLLC | | $ 3,799.88 |
| IRS | 27 | $ 29,962.70 |
| Joan Austin | | $ 28,775.25 |
| Kabbage Loan | | $ 2,974.15 |
| Kabbage Loan | | $ 22,493.33 |
| Kim & Leslie Crossman | | $ 225,000.00 |
| Kone, Inc. | | $ 2,409.13 |
| Lee Gardner | | $ 50,000.00 |
| Lee Gardner | | $ 34,402.34 |
| Lester A. Coggins, Jr. | 38 | $ 67,458.77 |
| Liberty Systems | | $ 1,718.71 |
| MBID | 2 | $ 143,137.58 |
| Morningstar Law Group | 9 | $ 38,180.61 |
| NC Circle of Kings Daughters | 28 | $ 139,447.33 |
| NCDOR | 21 | $ 42,825.11 |
| Northwoods Associates, LP | 11 | $ 181,406.25 |
| NuCO2, LLC | 44 | $ 511.90 |
| Onyx Centersource | | $ 250.00 |
| Open Table, Inc. | | $ - |
| Oral Technologies | | $ 10,000.00 |
| Pat Blaser | | $ 88,866.12 |
| PhD Posters, LLC | 39 | $ 37,003.08 |
| Pinnacle Bank | | $ 2,813.73 |
| Preservation II, Inc. | | $ 50,000.00 |
| PSNC Energy | 23 | $ 4,393.68 |
| Robert & Beth Emerson | 37 | $ 30,541.71 |
| Robert Crossman | | $ 67,927.25 |
| Robert Shibley | | $ 10,216.28 |
| Sunstone Growth Fund I, LLC | 18 | $ 700,275.00 |
| Supply Works | 16 | $ 5,142.00 |

| | | |
|---|---|---|
| Susquehanna Salt Lake, LLC | | $ 107,873.00 |
| The B&B Team | | $ 1,500.00 |
| Time Warner Cable/Spectrum | 4 | $ 1,353.38 |
| Time Warner Cable/Spectrum | 5 | $ 5,207.44 |
| TKPR | | $ 12,000.00 |
| Town of Cary | 22 | $ 3,270.94 |
| Town of Cary | 34 | $ - |
| US Bank | 19 | $ 54,542.96 |
| Village Cleaners | | $ 2,610.56 |
| Vito Tanzi | | $ 10,000.00 |
| Westfield Insurance | | $ - |
| William Hearn | | $ 386,064.71 |
| **TOTAL UNSECURED CLAIMS** | | **$ 3,562,226.54** |

| ASSETS | LIENHOLDER / AMOUNT OF LIEN | LIQUIDATION VALUE | NON-EXEMPT EQUITY |
|---|---|---|---|
| DIP KDI Operating | | $ 90,641.96 | $ 90,641.96 |
| DIP KDI Tax | | $ 29,298.96 | $ 29,298.96 |
| DIP Mayton Operating | | $ 36,001.73 | $ 36,001.73 |
| DIP Mayton Tax | | $ 3,530.62 | $ 3,530.62 |
| DIP Mayton Food and Beverage | | $ 29,983.12 | $ 29,983.12 |
| DIP Mayton Room Fees | | $ 30,786.94 | $ 30,786.94 |
| DIP Payroll | | $ 1,557.94 | $ 1,557.94 |
| 26.58% Interest in Mount Charleston Landlord, LLC | | $ - | $ - |
| Restaurant Food and Liquor Inventory | | $ - | $ - |
| King's Daughers Inn Office Equipment | | $ - | $ - |
| Mayton Inn Office Equipment | Key Equipment Finance<br>$ 11,514.81 | $ - | $ - |
| The Verandah Kitchen Equipment | Bryn Mar Equipment Finance ,Inc<br>$ 17,448.37<br>US Bank Equipment Finance<br>$ 10,000.00 | $ - | $ - |
| The Mayton Inn Furniture | Xeros Inc.<br>$ 48,750.00 | $ - | $ - |
| Kings Daughers Inn Furniture | | $ - | $ - |
| The King's Daughers Inn, 205 N. Buchanan Blvd., Durham, NC | Pinnacle Bank<br>$ 3,344,933.80<br>NC Department of Revenue<br>$ 136,063.35 | $ 3,454,500.00 | $ - |
| Mayton Inn, 301 S. Academy Street, Cary, NC<br>304 Mayton View Lane, Cary, NC<br>.20 acrew lot located at 106 East Park Street, Cary, NC | American Lending Center/USEDLC<br>$ 6,349,841.67<br>Mercantile Capital Corp<br>$ 5,315,027.90<br>Town of Cary<br>$ 1,179,674.00<br>Town of Cary<br>$ 1,771,755.00<br>NC Department of Revenue<br>$ 136,063.35 | $ 12,180,000.00<br>$ -<br>$ - | $ - |
| US Trademarks | | $ 950.00 | $ 950.00 |

| | | | | | |
|---|---|---|---|---|---|
| website urls for KDI, Mayton and Verhandah | | $ | 100.00 | $ | 100.00 |
| Customer List | | $ | 100.00 | $ | 100.00 |
| Note from Mt. Charleston Landlord, LLC | | $ | - | $ | - |
| | | | | $ | - |

**TOTALS** $ 15,857,451.27 $ 222,951.27

Gross Equity before Ch 7 Expense **$ 222,951.27**

**LESS:**

**ALL ASSETS**

**Real Property Marketing Expense**

| | | |
|---|---|---|
| Commission 6% Mayton Inn | $ | 730,800.00 |
| Commission 6% Kings Daughters Inn | $ | 207,270.00 |
| Closing Costs and Upkeep 1% | $ | 156,345.00 |
| | $ | **1,094,415.00** |

**Auctioneer Fees Personal Property**

| | | |
|---|---|---|
| 20% of first $5,000.00 | $ | 1,000.00 |
| 10% of next $5,000.00 to $50,000.00 | $ | 4,500.00 |
| 3% of balance over $50,000.00 | $ | - |
| | $ | **5,500.00** |

**Trustee's Commission/Expense**

| | | |
|---|---|---|
| 25% of first $5000 | $ | 1,250.00 |
| 10% of next $5000-$50,000 | $ | 4,500.00 |
| 5% of next $50,000-$1,000,000 | $ | 47,500.00 |
| 3% of the balance | $ | 439,069.50 |
| Trustee's Attorney Fees (estimated) | $ | 20,000.00 |
| | $ | **512,319.50** |

| | | |
|---|---|---|
| Ch. 11 Administrative Claims | $ | 100,000.00 |
| Priority Tax Claims | $ | 434,906.93 |
| | $ | **534,906.93** |

**Total Net Equity Available**
**to Unsecured Creditors in Chapter 7:** $ -

Exhibit "D"

| | May | June | July | August | September | October | November | December | January | February | March | April |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mayton Room Income | $ 149,500 | $ 125,000 | $ 99,000 | $ 150,000 | $ 165,000 | $ 181,500 | $ 199,650 | $ 115,000 | $ 105,000 | $ 145,950 | $ 166,950 | $ 152,250 |
| Mayton Room Expenses | $ 106,822 | $ 106,822 | $ 94,862 | $ 105,572 | $ 106,822 | $ 106,822 | $ 106,822 | $ 106,822 | $ 108,958 | $ 108,958 | $ 108,958 | $ 108,958 |
| Mayton F&B Income | $ 275,000 | $ 179,500 | $ 165,000 | $ 180,000 | $ 196,000 | $ 212,000 | $ 180,500 | $ 252,500 | $ 108,675 | $ 180,075 | $ 204,750 | $ 274,050 |
| Mayton F&B Expenses | $ 150,070 | $ 132,320 | $ 109,320 | $ 131,320 | $ 132,320 | $ 148,110 | $ 151,450 | $ 162,450 | $ 132,620 | $ 147,900 | $ 153,000 | $ 153,071 |
| Mayton Net | $ 167,608 | $ 65,358 | $ 59,818 | $ 93,108 | $ 121,858 | $ 138,568 | $ 121,878 | $ 98,228 | $ (27,904) | $ 69,167 | $ 109,742 | $ 164,270 |
| KDI Income | $ 77,203 | $ 36,703 | $ 30,700 | $ 42,700 | $ 47,700 | $ 73,000 | $ 57,200 | $ 31,200 | $ 42,703 | $ 66,700 | $ 57,203 | $ 72,703 |
| KDI Expenses | $ 33,156 | $ 33,156 | $ 33,156 | $ 33,156 | $ 33,156 | $ 30,656 | $ 29,156 | $ 29,156 | $ 33,156 | $ 33,156 | $ 33,156 | $ 33,156 |
| KDI Net | $ 44,047 | $ 3,547 | $ (2,456) | $ 9,544 | $ 14,544 | $ 42,344 | $ 28,044 | $ 2,044 | $ 9,547 | $ 33,544 | $ 24,047 | $ 39,547 |
| Plan Payments | $ 77,185 | $ 77,185 | $ 77,185 | $ 77,185 | $ 77,185 | $ 77,185 | $ 77,185 | $ 77,185 | $ 77,185 | $ 77,185 | $ 77,185 | $ 77,185 |
| Net Cash | $ 134,470 | $ (8,280) | $ (19,823) | $ 25,467 | $ 59,217 | $ 103,727 | $ 72,737 | $ 23,087 | $ (95,542) | $ 25,526 | $ 56,604 | $ 126,632 |
| w/ Starting Cash: $225,000 | $ 359,470 | $ 351,190 | $ 331,367 | $ 356,834 | $ 416,051 | $ 519,778 | $ 592,515 | $ 615,602 | $ 520,060 | $ 545,586 | $ 602,190 | $ 728,822 |
| Sans KDI | $ 315,423 | $ 303,596 | $ 286,229 | $ 302,152 | $ 346,825 | $ 408,208 | $ 452,901 | $ 473,944 | $ 368,855 | $ 360,837 | $ 393,394 | $ 480,479 |